IN MATTER OF JACOBS: JACOBS, APPELLANT, *v.* JACOBS, APPELLEE.

(Decided July 30, 1938.)

*Messrs. Griffith & Griffith, Messrs. Bricker, Power & Barton* and *Messrs. Baker, Hostetler, Sidlo & Patterson,* for appellant.

*Mr. Charles S. Druggan,* for appellee.

HORNBECK, J. This appeal is prosecuted on questions of law and fact from an order of the Probate Court adjudging William E. Jacobs to be an incompetent person and appointing a guardian of his estate. We consider a motion of the appellee, Edward H. Jacobs, to dismiss the appeal for the reason that this is not a chancery case.

There is little controversy between the parties as to the rules defining the cases which can be retried in this court. Both parties cite and comment on *Wagner* v. *Armstrong,* 93 Ohio St., 443, 113 N. E., 397; *In re Estate of Gurnea,* 111 Ohio St., 715, 146 N. E., 308, and *Squire, Supt. of Banks,* v. *Bates,* 132 Ohio St., 161,

5 N. E. (2d), 690, two of which we hereinafter discuss.

Our jurisdiction, under Section 6, Article IV, of the Ohio Constitution, is appellate, *i. e.,* on law and fact, in the trial of chancery cases. In *Wagner* v. *Armstrong, supra,* the court had under consideration the question whether appeal as then known could be prosecuted from an order of Common Pleas Court in partition, and, in determining that such method of review was proper, the court held in the two propositions of the syllabus, first, that our jurisdiction was expressly limited under the Constitution to chancery cases, and that all partition cases were originally cognizable in courts of chancery only and must still be regarded as chancery cases and therefore appealable under such terms and procedure as may be provided by law.

The opinion in this case has given us the definition of a chancery case which has been commonly accepted: "One in which, according to the usages and practices in courts of chancery prior to and at the time of the adoption of the Code of Civil Procedure, remedies were awarded in accordance with the principles of equity and not in accordance with rules of law."

In *In re Gurnea, supra,* the court had under consideration whether the settlement in Probate Court of the account of an executor constituted a chancery case and held that it did not. The opinion of Judge Allen is interesting and informative. She concedes that, at common law, courts of chancery assumed extensive jurisdiction over the administration of estates of decedents, but points out that by our Constitution of 1851, a distinct system of Probate Courts was created, the jurisdiction of which was defined in Section 8, Article IV, which, among other things, gives that court jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators and guardians; and that this provision in the organic law gave to the Probate Court separate

existence and separate jurisdiction. Judge Allen then marks the difference between *Wagner* v. *Armstrong* and the *Gurnea case,* in that in the *Wagner case* no separate court had been created by the Constitution with jurisdiction of partition suits, as had been done respecting Probate Courts in the settlement of accounts of executors, administrators and guardians, and concluding said:

"In other words, even though an action was originally cognizable in a court of chancery this court could not lightly hold that the sovereign people could not place such an action within the exclusive jurisdiction of another court, whose system was created and established by the Constitution."

Parenthetically, we might say that the *Gurnea case* could properly have been determined upon the final proposition therein considered, namely, that inasmuch as the case had been once reviewed *de novo,* it was not again appealable in like manner to the Supreme Court.

Respecting the English practice in ascertaining mental incapacity, 3 Story's Equity Jurisprudence (14 Ed.), 397, paragraph 1788, says:

"Upon a proper petition addressed to the chancellor, not as such, but as the person acting under the special warrant of the Crown, a commission issues out of Chancery on which the inquiry is to be made as to the asserted idiocy or lunacy of the party. The inquisition is always had and the question tried by a jury, whose unimpeached verdict becomes conclusive upon the fact."

It is further stated that in modern times the inquest may extend "to all persons who, from age, infirmity, or other misfortune, are incapable of managing their own affairs * * *."

And Story continues at page 394, paragraph 1785: "* * * the Court of Chancery may be properly deemed to have had originally, as the general delegate of the authority of the Crown as *parens patriae,* the

right not only to have the custody and protection of infants, but also of idiots and lunatics, when they have no other guardian.''

Our equity courts have no power comparable to *parens patriae*. *Rea, Exr.,* v. *Griffin,* 21 N. P (N. S.), 129, 29 O. D. (N. P.), 174.

And again in Story's Equity Jurisprudence, page 395, paragraph 1786:

''The jurisdiction therefore is now usually treated as a special jurisdiction for many purposes (certainly not for all) derived from the special authority of the Crown, under its sign manual, to the chancellor personally, and not as belonging to him as chancellor, or as sitting in the Court of Chancery. So that (it has been said) the sign manual does not confer on him any jurisdiction, but only a power of administration.''

These quotations from Story are not determinative of our question, but are interesting touching the exact nature of the jurisdiction of the early English courts respecting the appointments of guardians for incompetent persons and disclose that there may be doubt concerning their chancery jurisdiction of guardianship of an incompetent though there was no doubt as to jurisdiction in the settlement of the estate as involved in the *Gurnea case.*

In Ohio, prior to the Constitution of 1802, there was a Probate Court with jurisdiction concerning matters testamentary and of administration and an Orphans' Court consisting of the judges of the quarter sessions, together with the probate judge, with jurisdiction in matters of guardianship. This court and none of the courts then recognized had chancery powers. Historical Introduction to Ohio Jurisprudence, 1 Ohio Jurisprudence, 38, paragraphs 21, 22.

By the Constitution of 1802, the Common Pleas Court was vested with ''common-law and chancery jurisdiction,'' as might be directed by law, Section 3,

Article III, and also with jurisdiction "of all probate and testamentary matters, granting administration, the appointment of guardians, and such other cases as shall be prescribed by law." Section 5, Article III.

By the Constitution of 1851, the jurisdiction of the Common Pleas Court was to be fixed by law. Section 4, Article IV. The Probate Court was given jurisdiction in probate, administration, and guardianship matters. Section 8, Article IV.

It would appear that the general equity jurisdiction which was vested in the Common Pleas Court when it also had jurisdiction of probate, testamentary and guardianship matters, was a separate jurisdiction, and that the transfer of jurisdiction to the Probate Court did not include any general equity powers. *Gilliland* v. *Admrs. of Sellers,* 2 Ohio St., 223. This has been the interpretation of the equity jurisdiction of the Probate Court until the recent enactment of the new Probate Code. *Abicht, Exr.,* v. *O'Donnell,* 22 Ohio Law Abs., 82.

Applying then the test announced in *Wagner* v. *Armstrong, supra,* it would appear that at no time in Ohio, prior to the enactment of our civil code, were guardianship matters considered or adjudicated upon the principles or usages of equity. On the contrary, they were administered on the law side of the court.

The first and third propositions upon which Judge Allen grounded the decision in the *Gurnea case* to the effect that settlement of an executor's accounts does not constitute a chancery case, are pertinent and controlling here.

We are satisfied that this case is not one which is appealable on law and fact. The motion is to dismiss the appeal, which will not be sustained, but the entry may recite that the case can not be retried on the facts, but will proceed as an appeal on questions of law, and the appellant will be given thirty days from

the date of the entry journalizing this decision within which to have a bill of exceptions settled and allowed.

*Judgment accordingly.*

BARNES, P. J., and GEIGER, J., concur.